UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

ANDRÉ DECKER,

                              Petitioner,

  -against-

UNITED STATES OF AMERICA,

                              Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __8/4/2023____

No. 22-CV-5467 (NSR)
No. 20-CR-104-1 (NSR)

ORDER AND OPINION

NELSON S. ROMÁN, United States District Judge:

On July 13, 2021, Court sentenced André Decker ("Petitioner" or "Defendant" or "Decker"), following entry of a guilty plea, to Count One of the Indictment, which charged him on being a felon in possession, in violation of 18 U.S.C. § 922(g)(1). (*See* ECF No. 4 (the "Indictment"); ECF No. 41 (the "Judgment").  Decker was sentenced to a term of imprisonment of 48 months, followed by three years of supervised release.  (*See* Judgment.)

On June 15, 2022, Decker filed a *pro se* petition pursuant to 28 U.S.C. § 2255 (the "2255 Petition") to set aside his sentence, arguing that (1) he was denied his right to appeal; (2) the Government purportedly failed to turn over exculpatory or favorable evidence; and (3) of ineffective assistance of counsel in counsels' failure to make certain motions or request a sentencing adjournment. (ECF No. 68 ("Pet. Mem.") at 4–7.)  The Government filed a response to the petition on August 15, 2022.  (ECF No. 70, "Gov't Opp.") and Decker filed a reply on August 29, 2022 (ECF No. 74, "Reply").  For the following reasons, Decker's petition is DENIED in its entirety.

**BACKGROUND**

The Complaint, filed on January 27, 2020, alleges that on January 26, 2020 law enforcement arrived at a scene in Newburgh, NY following witness phone calls to the City of Newburgh Police Department ("CNPD") directory reporting that an altercation involving knives and tasers was occurring in the area. (*See* ECF No. 1 ("Compl.") ¶ 3a-c.). When police arrived, dozens of onlookers were surrounding a black sedan, and one onlooker stated loudly that there was a gun in the car (Compl. ¶ 3d.)  When law enforcement tried to approach the car, the car attempted to drive away and crashed into a nearby car. (*Id*. ¶ 3e.)  Decker was sitting in the car's rear passenger seat and moving his arms in the vicinity of his legs by the car's rear passenger seat window. (*Id*. ¶ 3g.)  A gun, which was loaded with nine rounds of ammunition, was recovered from where Decker had been sitting. (*Id*. ¶ 3j-k.)

Decker was arrested on January 27, 2020, and the Indictment was filed on February 6, 2020, charging Decker with violating the felon in possession statute, 18 U.S.C. §922(g)(1) and (2), in connection with his possession of a loaded Smith and Wesson 9mm model firearm while having been previously convicted of a felony. (*See* Indictment.)  On December 29, 2020, Decker pleaded guilty, pursuant to a plea agreement, to the sole count in the Indictment, in a Change of Plea proceeding before Magistrate Judge Krause. (ECF No. 32.)

The Court sentenced Decker on the sole count of the Indictment on July 13, 2021. (*See* ECF No. 61 ("Sentencing Transcript" or "Sentencing Tr.")  While the Court found that Decker's Guidelines range was 57 to 71 months' imprisonment followed by three years of supervised release, the Court sentenced Decker to a term of 48 months' imprisonment followed by three years of supervised release. (*See* Sentencing Tr. 21:2–7; 22:5–20.)

**LEGAL STANDARD**

I.   **28 U.S.C. § 2255 Standard**

A motion under 28 U.S.C. § 2255 is an extraordinary remedy. *See Moyhernandez v. United States*, No. 02 Civ.8062 MBM, 2004 WL 3035479 (S.D.N.Y. Dec. 29, 2004). 28 U.S.C. § 2255(a) provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

§ 2255(b) provides, in relevant part:

> If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

A plain reading of the statute contemplates providing a mechanism to detained individuals who seek judicial relief from a wrongfully imposed sentence. It is well settled that § 2255 provides a collateral remedy and not a remedy for an appeal such that it can used to challenge the sufficiency of the evidence. *See Dansbay v. United States*, 291 F. Supp. 790 (S.D.N.Y. 1968); *see also Bousley v. United States*, 523 U.S. 614, 621 (1998).

II.   **Pleas and Plea Agreements**

The Federal Rule of Criminal Procedure 11(b) provides that before the court may accept a guilty plea, a defendant must be informed of his or her constitutional rights and must demonstrate that the plea is entered voluntarily. Courts have held that for a guilty plea to be deemed valid, it must

be entered into voluntarily, knowingly, and intelligently and "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf,* 545 U.S. 175, 183 (2005) (quoting *Brady v. United States,* 397 U.S. 742, 748 (1970)); *see also McCarthy v. United States*, 394 U.S. 459, 466 (1969).  This standard exists because the failure to obtain a valid plea is deemed a violation of a defendant's due process rights. *McCarthy*, 394 U.S. at 466.  In addition, the court must determine whether the conduct which the Defendant admits to was committed by the accused and constitutes the offense charged in the Indictment, the charging instrument, or the offense for which the defendant has accepted responsibility for pursuant to a plea agreement.  *See id.* at 467 (citing Fed. R. Crim. P. 11, advisory committee notes).

Plea agreements are generally favored because they tend to conserve valuable prosecutorial resources and defendants tend to receive more favorable terms at sentencing.  *Missouri v. Frye*, 566 U.S. 134, 144 (2012).  It is a basic core principle that plea agreements are to be interpreted under the same standards of contract law, *see United States v. Rodgers*, 101 F.3d 247, 253 (2d Cir. 1996), bearing in mind, however, that they "are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." *United States v. Ready*, 82 F.3d 551, 558 (2d Cir.1996) (quotations and citation omitted), *superseded on other grounds as stated in United States v. Cook,* 722 F.3d 477, 481 (2d Cir. 2013); *accord United States v. Cimino*, 381 F.3d 124, 127 (2d Cir. 2004); *United States v. Aleman*, 286 F.3d 86, 90 (2d Cir. 2002).  Words and phrases in the agreement are to be given their plain meaning, *see United States v. Dionisio*, 415 F. Supp. 2d 191, 201 (E.D.N.Y. 2006), *aff'*d, 503 F.3d 78 (2d Cir. 2007), and terms are to be strictly construed. *United States v. Pollack*, 91 F.3d 331, 335 (2d Cir. 1996).  Any ambiguity in the agreement must be construed against the drafter, typically the Government, *see United States v. Gotti*, 457 F. Supp. 2d

411, 415 (S.D.N.Y. 2006), because "the Government is usually the party that drafts the agreement, and [because] the Government ordinarily has certain awesome advantages in bargaining power." *United States v. Padilla*, 186 F.3d 136, 140 (2d Cir. 1999) (quoting *Ready*, 82 F.3d at 559). In deciding whether a plea agreement has been breached, a court must look to what the parties to the plea agreement reasonably understood its terms to be. *United States v. Carbone*, 739 F.2d 45, 46 (2d Cir. 1984) (quoting *Paradiso v. United States*, 689 F.2d 28, 31 (2d Cir. 1982) (*per curiam*), *cert. denied*, 459 U.S. 1116 (1983)).

### III.   Ineffective Assistance of Counsel

It is well settled that counsel owes her client a duty of loyalty, a duty to avoid conflicts of interest, and when representing a criminal defendant, counsel's role is to assist defendant in his defense within the permissible rules of law. *See generally Strickland v. Washington*, 466 U.S. 668 (1984). Such assistance includes the duty to advocate defendant's cause, to consult with the accused on all matters of importance and to appraise the defendant of important developments in the course of the prosecution. *Id*. at 688. The Sixth Amendment to the United States Constitution "guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings," *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (quoting *United States v. Wade*, 388 U.S. 218, 227–228 (1967)), which includes the entry of a guilty plea, *Argersinger v. Hamlin*, 407 U.S. 25, 38 (1972), and sentencing. *Mempa v. Rhay,* 389 U.S. 128 (1967). With respect to a negotiated plea, counsel has the utmost obligation to advise his client of "the advantages and disadvantages of a plea agreement." *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (quoting *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)). At sentencing, counsel's sage advice and forceful advocacy can serve to

5

minimize a defendant's period of incarceration. *See Glover v. United States*, 531 U.S. 198, 203 (2001).

When evaluating counsel's performance, judicial scrutiny must be highly deferential and must not serve as an opportunity to act as a Monday morning quarterback. *See Strickland*, 466 U.S. at 689. In order to reverse a conviction based on ineffective assistance of counsel, there must be a showing that counsel's assistance was deficient and that such deficiency prejudiced the defense so as to deprive the defendant of a fair proceeding. *Strickland*, 466 U.S. at 687–693. Where the defendant enters a guilty plea upon counsel's advice, the voluntariness of the plea is dependent on whether the advice was within range of competence demanded of attorneys in criminal cases and whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 56, 69. (1985). "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [] strategy.'" *Strickland*, 466 at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A defendant claiming ineffective assistance "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

**DISCUSSION**

Decker makes the instant 2255 Petition in order to set aside his sentence, arguing that (1) he was denied his right to appeal; (2) the Government purportedly failed to turn over exculpatory or favorable evidence; and (3) he received ineffective assistance of counsel as made evident by counsel's failure to make certain motions and request a sentencing adjournment. (ECF No. 68 (Pet. Mem. at 4–7.)  For the following reasons, the Court DENIES Decker's request on all grounds.

**I.  Failure to Directly Appeal Conviction**

Under Federal Rule of Appellate Procedure 4(b)(1)(A), "[i]n a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after" the entry of judgment.  Fed. R. App. P. 4(b)(1)(A); *see also United States v. Hernandez*, 669 F. App'x 39 (2d Cir. 2016) (summary order), as corrected (Oct. 4, 2016) ("A notice of appeal in a criminal case must be filed within 14 days of the entry of the judgment or order being appealed.").  Under Federal Rule of Appellate Procedure 4(b)(4), "[u]pon a finding of excusable neglect or good cause, the district court may—before or after the time has expired, with or without motion and notice— extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b)."  Fed. R. App. P. 4(b)(4) (emphasis added).  Thus, "if it finds excusable neglect or good cause," a district court "may extend this deadline by 30 days."  *Hernandez*, 669 F. App'x at 39.  "When the government properly objects to the untimeliness of a defendant's criminal appeal, Rule 4(b) is mandatory and inflexible."  *United States v. Frias*, 521 F.3d 229, 234 (2d Cir. 2008) (citations omitted).

Decker argues that he was denied his right to appeal because he attempted to mail a notarized notice of appeal as a *pro se* litigant, yet his notice of appeal was never processed.  (Pl.'s Mem. at 5.)

7

The Court's review of the docket shows that on January 25, 2022, the Clerk of Court for the U.S Court of Appeals for the Second Circuit ("Second Circuit") filed a letter indicating that Decker's notice of appeal was mistakenly sent to the Second Circuit under FRAP 4(d). (*See* ECF No. 54.) The attachments to the Clerk of Court's letter includes a December 30, 2021 letter from Decker asking why his direct appeal had not yet been addressed and stating that he understood that he had filed a timely notice of appeal. (*Id*.) The attachments also include another letter from Decker, dated July 18, 2021, which was sent to the Second Circuit and where Decker states his intent to file an appeal. (*Id*.)

The Court notes that while the Court understands the difficulties for *pro se* litigants, particularly incarcerated *pro se* litigants, in navigating the court system, the Court notes that *pro se* litigants are still under obligation to correctly file petitions, motions, and notices, including notices of appeal.

In any event, even if Decker had timely filed an appeal to his conviction, his appeal would have been barred under the terms of his plea agreement. (*See* ECF No. 70-1 ("Plea Agreement") at 5.) Under the terms of his Plea Agreement, Decker agreed not to appeal or collaterally challenge any sentence less than or equal to 57 months' imprisonment. As noted in the Plea Agreement:

> "It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Government's Stipulated Guidelines Range of 57 to 71 months' imprisonment (if the Court determines that U.S.S.G. § 4A1.1(e) applies), or of any sentence within or below the Defendant's Stipulated Guidelines Range of 46 to 57 months' imprisonment (if the Court determines that U.S.S.G. § 4A1.1(e) does not apply) . . ."

(*See* Plea Agreement at 4.) Because Decker was sentenced to 48 months' imprisonment, he is barred from making the instant challenge under the terms of the Plea Agreement. *See United States v.*

*Riggi*, 649 F.3d 143, 147 (2d Cir. 2011) ("Waivers of the right to appeal a sentence are presumptively enforceable."); *see also United States v. Lee*, 523 F.3d 104, 106 (2d Cir. 2008) ("[i]t is ... well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable.") (citing *United States v. Djelevic*, 161 F.3d 104, 106 (2d Cir. 1998)).

## II.    Failure to Produce "Exculpatory Material"

Putting aside Decker's failure to properly file an appeal as well as waivers he agreed to under his Plea Agreement, the Court finds meritless Decker's argument to vacate his sentence on the grounds that the Government failed to produce purportedly exculpatory material prior to his change of plea.

Decker argues that the Government refused to turn over evidence relating to a "videotaped debriefing of an individual named 'Donahue' conducted by task force officers in which 'Donahue' gave detailed information concerning firearms that he sold." (Pet. Mem. at 6.)  Decker states that the debriefing occurred prior to his arrest, and "contradicted task force officer statements that they knew nothing of the fireman (a Smith and Wesson 9mm) I was charged with possessing." (*Id*.) Decker avers that had the Government disclosed the materials before he pled guilty, Decker would have pursued a "public authority defense" showing actual innocence, and that he would not have pled guilty. (*Id*; Reply at 2.)

Under *Brady*, "the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *United States v. Jackson*, 345 F.3d 59, 70 (2d Cir. 2003) (citing *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001)). To demonstrate a violation of this duty, the Petitioner must show "(1) the Government, either

9

willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the Petitioner; and (3) the failure to disclose this evidence resulted in prejudice." *Coppa*, 267 F.3d at 140 (citing *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

As an initial matter, as part of the Plea Agreement, Decker waived:

> "any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, Jencks Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), that has not already been produced as of the date of the signing of this Agreement."

(Plea Agreement at 5.)

During the Change of Plea hearing held on December 29, 2020, Magistrate Judge Krause asked Decker on the record whether he understood the above-mentioned waiver, to which Decker answered, "Yes."  (ECF No. 32 (Change of Plea Tr.) at 28–29.).  This knowing waiver precludes Plaintiff's *Brady* challenge raised in this 2255 Petition.  *See, e.g., Ocasio v. United States*, No. 01 CIV. 6650 (DAB), 2004 WL 405942, at *4 (S.D.N.Y. Mar. 4, 2004) (finding that petitioner's motion to vacate his sentence on the basis that the Government failed to produce exculpatory *Brady* material prior to the plea was barred by the plea agreement's terms creating a procedural bar to *Brady* claims.).

Moreover, it is unclear how the purported evidence withheld by the Government would have assisted Decker in making a public authority defense, which entails asserting "a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense . . . ." Fed. R. Crim. P. 12.3(a)(1).  In any event, Decker

10

made sworn statements during his Change of Plea hearing that he understood the nature of his crime and knew that his conduct was unlawful. *See* Change of Plea Tr. at 40:21–23 ("I was in a vehicle, and I had possession of the said firearm on said date. I totally possessed it. Nobody else had anything to do with it."); *id*. at 42:21–23 (Decker responding "Yes" to Magistrate Judge Krause's question, "Did you know it was against the law to do what you were doing."). Decker's sworn statements describing his acceptance of responsibility for the crime charged belies his contention that he would not have taken a plea because the withheld evidence could have shown that he was innocent. *See, e.g., Gutierrez v. United States*, No. 02 CR. 1312 (DAB), 2005 WL 2207026, at *4 (S.D.N.Y. Sept. 6, 2005) ("Petitioner's uncorroborated assertion that he was induced to plead guilty by his attorney's false promise is not enough to overcome the presumption of voluntariness created by his sworn statements to the Court during his plea allocution."); *Rensing v. United States*, No. 16 CR 442 (VM), 2021 WL 1326909, at *9 (S.D.N.Y. Apr. 8, 2021) ("Rensing's unsupported and conclusory claims that trial counsel coerced him to plead guilty cannot be credited because they are directly contradicted by his sworn statements at the plea hearing.")

Accordingly, Petitioner's *Brady* claim is denied.

### III. Ineffective Assistance of Counsel

Separately, Decker seeks to vacate his conviction on ineffective assistance of counsel grounds. "[F]ailure to raise an ineffective assistance of counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).

Decker argues that his attorneys were ineffective because (1) they failed to move to compel the Government to provide the videotaped debriefing of "Donahue", described above; (2) they failed

to move to dismiss the Indictment because of restrictions imposed by Westchester and Orange County Jails barring his ability to review electronic discovery; and (3) they failed to adjourn his sentencing. Decker argues that had he been able to receive and review the videotaped evidence before the plea, he would not have pled guilty and would have instead raised a "public authority" defense to prove his innocence. (Pet. Mem. at 6; Reply at 2–3.) The Court founds that none of the grounds Decker raises merits a finding of ineffective assistance of counsel.

Pursuant to Section 2255, "a convict in federal custody may petition the court that sentenced him to vacate his sentence for ineffective assistance of counsel." *Herrera v. United States*, No. 19 Civ. 10637, 2019 WL 6498102, at *2 (S.D.N.Y. Dec. 2, 2019) (citing *Massaro v. United States*, 538 U.S. 500, 504–06 (2003)). To succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was objectively deficient, and (2) the petitioner was actually prejudiced as a result. *See Strickland*, 466 U.S. at 687–88, 692–93. The *Strickland* test has been characterized as "rigorous" and "highly demanding." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (citations and internal quotation marks omitted). In addition, as stated in *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996)

> "A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.' In other words, 'the issue [is] not the merits of these [independent] claims as such, but rather whether the guilty plea had been made intelligently and voluntarily with the advice of competent counsel.'"

*Id*. (citing *Tollett v. Henderson*, 411 U.S. 258, 265, 267 (1973); *see also Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) ("An ineffective assistance of counsel claim survives the guilty plea or

12

the appeal waiver only where the claim concerns 'the advice [the defendant] received from counsel.'") (citing *United States v. Torres*, 129 F.3d 710, 715–16 (2d Cir.1997)).

Decker's claims regarding his counsels' failure to move to compel certain production of discovery and move to dismiss the Indictment pertain to events that occurred prior to his entry of the guilty plea, and do not pertain to the "voluntary and intelligent character" of the guilty plea.  *See Coffin*, 76 F.3d at 497; *see also Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) ("We agree with the Government that much of Parisi's argument misses the point because it focuses on pre-plea events rather than the plea agreement process.").  In addition, all three of Decker's claims reflect his disagreements with his counsels' strategy in the course of their representation, none of which pertain to Decker's accepting of his guilty plea.  *See Parisi*, 529 F.3d at 138 ("Parisi's challenge, which rests on his assertion that an effective lawyer would have successfully obtained dismissal of his case, does not relate to the process by which Parisi agreed to plead guilty . . . Parisi would have this Court turn its gaze away from the plea process and toward the multitude of ways in which pre-plea events might reduce the strength of the defense and worsen the defendant's bargaining power vis-à-vis the prosecutor. We decline that invitation.").  Therefore, Plaintiff's claims cannot serve as grounds to find that his counsel provided ineffective assistance with respect to his guilty plea.

Plaintiff's claims also do not overcome the fact that Plaintiff made sworn statements at his Change of Plea hearing stating that he freely and voluntary was accepting responsibility for the crime charged.  *See* Change of Plea Tr. at 40:21–23 ("I was in a vehicle, and I had possession of the said firearm on said date. I totally possessed it. Nobody else had anything to do with it."); *id*. at 42:21–23 (Decker responding "Yes" to Magistrate Judge Krause's question, "Did you know it was against the law to do what you were doing.").  Nor did Plaintiff raise any issues—including a purported

13

inability to review electronic discovery—during his Change of Plea hearing before Magistrate Judge Krause, and instead, he represented to the Court that he was satisfied with his counsels' representation and that he was prepared to plead guilty. *Id*. at 16:24–17:1; 19:17–19; 43:17–15. The Court therefore agrees with the Government that Decker has provided no basis to conclude that his plea was involuntary or unintelligent. (*See* Gov't Opp. at 26.)

In any event, the Court finds that counsels' performance was not objectively deficient. "[F]or purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation. Counsel certainly is not required to engage in the filing of futile or frivolous motions." *United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987) (internal citation omitted). Defendant does not articulate any foundation for raising a public authority defense based on the video evidence that Government purportedly failed to disclose prior to the plea, and therefore, the Court does not find that counsels' failure to file a motion to compel production or a motion to dismiss the Indictment means that their representation was deficient.

In addition, in his Reply, Decker argues that while his counsel made the Court aware that Decker "had not been afforded any opportunity to review any electronic discovery material at any time from his arrest to his sentencing," counsel took no further steps to ensure that Decker would be "allowed to review electronic discovery material and thereby participate in every critical stage of the case." (Reply at 2.) These statements, made for the first time in this 2255 Petition, are contradicted by Plaintiff's sworn statements at his Change of Plea proceeding where he represented to the Court that he was satisfied with his counsels' representation, and that he was freely and voluntarily entering his plea. (*See* Change of Plea Tr. at 16:24–17:1; 19:17–19.) Nor did Decker raise the issue despite having had the opportunity to do so during the Change of Plea proceeding and his sentencing. (*See*

14

*id.* at 43:17–15.) In addition, Decker fails to specify how his how his ability to review the electronic discovery "would have motivated him to go to trial instead of entering a guilty plea." *Johnson v. United States*, No. CR TDC-16-0030, 2019 WL 266210, at *5 (D. Md. Jan. 18, 2019).[1]

The Court also finds that petitioner was not actually prejudiced as a result of any deficiency by his counsels' representation. "In the specific context of guilty pleas, the prejudice analysis 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Mateus v. United States,* No. 18 CIV. 638 (KPF), 2020 WL 1046624, at *6 (S.D.N.Y. Mar. 4, 2020) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). As noted in *Padilla v. Kentucky*, it is "often quite difficult for petitioners who have acknowledged their guilt to satisfy Strickland's prejudice prong." 559 U.S. 356, 371 n.12 (2010). Here, for reasons already discussed above, Decker fails to raise any persuasive arguments that there is a reasonable probability that he would not have pleaded guilty but for counsels' purported deficiencies.

## CONCLUSION

For the foregoing reasons, Defendant's motion pursuant to 28 U.S.C. § 2255 to vacate his conviction is DENIED in all respects. The Clerk of the Court is directed to terminate the motion at ECF Number 68.

---

[1] The Court also notes, as well, that his counsels' effectiveness in their representation is reflected in the fact that Decker was sentenced to 48 months incarceration, which is well below the 57 to 71 incarceration range recommended by Sentencing Guidelines. (*See* Sentencing Tr. 21:2–7; 22:5–20.)

The Government is directed to mail a copy of this order to *pro se* Petitioner at his address where he is currently serving his term of supervised release, and file proof of service on the docket on or before August 11, 2023.

Dated: August 4, 2023
       White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE